1. DANIEL L. PRATT, Hillsdale.
2. DANIEL BLACKMAN, Cassopolis.
3. JARED PATCHEN, Detroit.
4. SAMUEL HIGBEE, Jackson.
5. GEO. WOODRUFF, Marshall.
6. JAMES S. DEWEY, Pontiac.
7. JOSIAH TURNER, Owosso.
8. LOUIS S. LOVELL, Ionia.

9. CHARLES R. BROWN, Kalamazoo.
10. JABEZ G. SUTHERLAND, Saginaw City.
11. DANIEL GOODWIN, Detroit.
12. J. O'GRADY, Houghton.
13. JONATHAN G. RAMSDELL, Traverse City.
14. A. H. GIDDINGS, Newaygo.
15. CHAS. UPSON, Coldwater.
16. WILLIAM T. MITCHELL, Port Huron.

———◦———

## GEORGE H. GALE, VS. THE VILLAGE OF KALAMAZOO.

Municipal Corporations act in a two-fold capacity, and exercise two kinds of power; one governmental and the other private. In one capacity it represents a part, and is an instrumentality of the sovereignty of the State, for the local government of the Village; in the other, it represents those proprietary interests that appertain to it in common with other corporations. In the latter capacity the corporation owns property, manages it for profit, employs servants and makes contracts: in the other, it makes laws to promote the general welfare and exercises a governing power that is entirely distinct from and superior to those privileges which are incident to the ownership of property or corporate franchise.

A provision in a Village charter authorizing the President and Trustees "to construct and regulate markets, the vending of poultry, meats, vegetables, fruit and fish ," gives authority to act in a governmental *and* private capacity.

GALE *v.* VILLAGE OF KALAMAZOO.

Under such a charter, a Village may construct or lease a market, and regulate its use at will within the scope of its charter, as to police regulations, &c.

The power "*to regulate markets, &c,*" extends further than to manage its corporate property; it enables the Council to make rules obligatory upon persons not in the employ of the corporation, and who stand in no other than political relations to it.

The end for which the power to construct markets is given, is the convenience to the public and more easy enforcement of sanitary and other police regulations.

The governing powers of the Village are conferred in trust, and cannot be delegated, contracted away, nor suspended ; and the exercise of them cannot be restrained by contract.

The Council cannot establish market regulations so firmly that the same or a subsequent Council could not repeal nor modify them.

The Corporation is not liable for the exercise of its legislative power.

*Argued, submitted and decided at the November Term*, 1869, *of the Circuit Court for the County of Kalamazoo.*

Authorities cited by plaintiff's Counsel : *Const. U. S., Art.* 1, *Sec.* 10 ; *Cooley's Const. Lim.* 126 ; 4 *Wheat.* 518 ; *Cooley* 127; 6 *How.* 318 ; 3 *Wal.* 52 ; 3 *How.* 133 ; 16 *How.* 369 ; 18 *How.* 331 ; 1 *Black* 436 ; 9 *Johns.* 507 ; 7 *N. H.* 35 ; 2 *Gray* 1 ; 32 *Barb.* 364 ; *Cooley* 198 ; *Angel & Ames on Corp.* 332 ; 25 *Ill.* 148 ; 31 *Pa. St.* 175, 185 ; 32 *N. Y.* 270 ; 25 *Mo.* 40 ; 7 *Iowa* 110 ; 3 *Hill* 531 ; 13 *Iowa* 210 ; 12 *Mich.* 138 ; 43 *N. H.* 343.

Authorities cited by defendant's Counsel : 2 *Cushing* 337 ; 5 *Peters* 349 ; 98 *Mass.* 59 ; 5 *Cowen* 538 ; 7 *Cowen* 604 ; 32 *N. Y.* 271 ; 27 *N. Y.* 621 ; 10 *Howard* 534 ; 43 *Ill.* 337 ; 45 *Ill.* 90 ; 46 *Ill.* 490.

STEWART & EDWARDS for Pltff., SEVERENS & BURROWS, and D. D. HUGHES, of Counsel.

J. W. BREESE, for Deft., DWIGHT MAY, G. V. N. LOTHROP and C. I. WALKER, of Counsel.

*By the Court,* SUTHERLAND, J.

The questions in this case are presented by way of a demurrer to the declaration.

The plaintiff has erected a large building in the village of Kalamazoo on his own grounds, pursuant to an alleged agreement with the corporate authorities of that Village. That agreement was substantially, that the plaintiff should erect and thereafter keep in repair, a building to be denominated the " Kalamazoo Public Market," to be used for vending meat, fish, poultry, game, fruit, vegetables, eggs, and butter ; that it should

be arranged with convenient stalls, fixtures, and approaches; that it should cost not less than $8,000, including the ground, and be completed by January 1, 1868. He was to place it under the control of the President and Trustees of the village for ten years. The stalls were to be rented to such persons, and for such time and price, as should be agreed on by the plaintiff and the village authorities, and the rent was to be paid to the plaintiff.—The President and Trustees are alleged to have agreed on their part, among other things, that during the period covered by the contract, there should be no other public market, provided this market should be large enough; that the sales of all the said articles within the corporate limits of the village, should, during market hours, be confined to said market house, and the ground specified in section 11 of the village by-laws relating to markets.

The declaration alleges, among other breaches of the agreement, on the part of the defendant, that other market houses have been allowed in the village; that the defendant refuses to confine such sales to the said market limits; that it refuses to enforce the ordinance regulating the market house, and the vending of the articles aforesaid, and has repealed such ordinance.

The important question raised by the demurrer is, whether the alleged agreement is valid; whether, conceding that the instrument was prepared and executed in such form that it purports to be the corporate agreement of the President and Trustees, it was within their power so as to render the defendant responsible as a party for its faithful execution.

The defendant, being a municipal corporation, acts in a two fold capacity; in other words, exercises two kinds of powers, one governmental and public, and the other private. In one capacity it represents a part, and is an instrumentality of the sovereignty of the State, for the local government of the village. In the other capacity it represents those private and proprietary interests that appertain to it in common with other corporations. In this capacity the corporation owns property, manages it for profit, employs servants, makes contracts. In the other, or public capacity, it makes laws to promote the general

welfare, exercises a governing power that is entirely distinct from and superior to those privileges which are incident to the ownership of property or corporate franchise.

The charter of the village authorizes the President and Trustees—" to construct and regulate markets, the vending of poultry, meats, vegetables, fruit, and fish." In this provision there is authority to act in both capacities.

It has authority to *construct* a market, and both sides concede that there is included a right to lease a building for a market. In constructing or leasing a market building, and in the subsequent renting of it, and collecting rents, and in doing any and all such other acts as owners or lessees of buildings usually do to increase the rental value of their tenements, the defendant would act in its private character. In these respects it would have the same privileges as other corporations. It could make any use of the building constructed or leased, and regulate that use according to its will, within the scope of its charter, but subject, like natural persons, and other and exclusively trading corporations, to such police regulations, or taxation, as, under the authority of the charter, the corporation, in its governing character, might prescribe.

The power " to *regulate markets* and the vending of poultry, meats," &c., extends farther than to manage its corporate property; it enables the council to make rules obligatory on persons who are not in the employ of the corporation and who stand in no other than political relations to it. That power is conferred on it for exercise in its municipal character for purposes of Government. If, under it, restraints are imposed in respect to sales at other places than the public market, and their effect is to increase the emoluments of the corporation, that advantage is incidental and secondary. Regulations may, also, be made which will operate to the prejudice of the revenue by permitting sales at other places for the general convenience. The end for which the power to construct markets is given is not that the corporation may realize a pecuniary profit, but convenience to the public and more easy enforcement of sanitary and other police regulations. The power to put in force such regulations is legislative, in the same sense and for the same general purpose as the

authority to order new streets to be opened, or old ones to be improved, to abate nuisances, suppress gambling, and prevent rapid driving. These governing powers are conferred in trust to be exercised for the benefit of the whole village, as occasion may require. They cannot be delegated by the officers or board, in whom they are vested, nor contracted away, nor suspended. The exercise of them cannot be embarrassed or restrained by contract.

The agreement in question assumes to determine for ten years the scope of this legislative authority in respect to markets and the vending of the articles mentioned in the charter, and to direct how particularly it shall be exercised. It is believed that this function of the village council is beyond the reach of the contract making power of the corporation, that it is as clearly above all restraint by contract as the judicial power, if any, conferred on village magistrates.

After a public market has been established, should the council deem that the public convenience would be thereby promoted, it could legally restrain sales of the specified articles at all other places. The council could not, however, establish any such regulations so firmly that the same or a subsequent council could not repeal nor modify them. An agreement by the corporation for that purpose, would be an agreement for an illegal purpose, and an impossibility.

The corporation is not liable for any exercise of its legislative power, whether negative in refusing to pass particular by-laws or ordinances; or affirmative, in putting in force those that are obnoxious.

If it was possible to sustain a contract under any. circumstances, imposing obligations to regulate the vending of articles in a particular manner, and to hold such regulations irrepealable, this agreement is liable to the fatal objection, that it assumes to bind the corporation to establish and maintain a monopoly for the benefit of the plaintiff.

The contract does not, in substance, provide for constructing a market by or for the defendant; when constructed by the plaintiff pursuant to that arrangement it is neither owned by, nor leased to, the defendant. It provides for constructing a market

for the plaintiff. The defendant was not to derive any profit whatever from it. The stalls were to be rented with his express assent, and the rent collected for the plaintiff. The whole connection of the defendant with the market, all its occupation, and the exertion of its authority, stipulated for, were without any promise of pecuniary return, and solely to increase the demand for leases of stalls, and thereby to enhance the plaintiff's profits.

The corporation is not authorized to establish such a monopoly; nor can its governmental powers be bound to maintain it.

The demurrer is sustained.